## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MELISSA COBB,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:17-CV-01057-MHH** |
| | } | |
| **NANCY BERRYHILL,** | } | |
| **Acting Commissioner of the** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), plaintiff Melissa Cobb seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Cobb's claim for supplemental security income. After careful review, the Court reverses the Commissioner's decision.[1]

## I. PROCEDURAL HISTORY

Ms. Cobb applied for supplemental security income on April 1, 2014. (Doc. 6-3, p. 18; Doc. 6-4, p. 25). Ms. Cobb initially alleged that her disability began July 7, 2013, but she later amended her alleged disability onset date to April 1, 2014. (Doc 6-3, p.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. (*See* https://www.ssa.gov/agency/commissioner.html). Therefore, the Court asks the Clerk to please substitute Ms. Berryhill for Carolyn W. Colvin as the defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

40).[2]  The Commissioner initially denied Ms. Cobb's claim on July 23, 2014.  (Doc. 6-5, pp. 2-6).  Ms. Cobb requested a hearing before an Administrative Law Judge (ALJ). (Doc. 6-5, pp. 7-8). The ALJ issued an unfavorable decision on June 17, 2016.  (Doc. 6-3, pp. 18-31).  On April 25, 2017, the Appeals Council declined Ms. Cobb's request for review (Doc. 6-3, pp. 2-4), making the Commissioner's decision final and a proper candidate for this Court's judicial review.  *See* 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ.  *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation

---

[2] Ms. Cobb's lawyer moved to amend the alleged onset date at the administrative hearing on April 7, 2016.  (Doc. 6-3, pp. 20, 40).  Although the parties in their briefs use July 7, 2013 as the onset date, it appears that the ALJ granted the oral motion to amend at the administrative hearing.  (Doc. 6-3, pp. 40-41).

omitted). If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.     SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Cobb has not engaged in substantial gainful activity since April 1, 2014, Ms. Cobb's amended onset date. (Doc. 6-3, p. 20; *see* Doc. 6-3, pp. 40-41). The ALJ determined that Ms. Cobb suffers from the following severe

impairments: generalized anxiety disorder; dysthymia (persistent depressive disorder); right-side stroke from bacterial endocarditis; history of restless leg syndrome; chronic hepatitis C; status-post drug overdose complicated by sepsis; stroke; renal failure; asthma; opiate addiction; celiac disease; history of gastroparesis; and borderline personality disorder. (Doc. 6-3, p. 20). The ALJ also found that Ms. Cobb has the following non-severe impairments: hypothyroidism and anemia. (Doc. 6-3, p. 20). Based on a review of the medical evidence, the ALJ concluded that Ms. Cobb does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 6-3, pp. 21-23).

In light of Ms. Cobb's impairments, the ALJ evaluated Ms. Cobb's residual functional capacity. (Doc. 6-3, pp. 23-29). The ALJ determined that Ms. Cobb has the RFC to perform:

> sedentary work as defined in 20 CFR 416.967(a) except she can only ambulate short distances up to 100 yards on flat, hard surfaces per instance. With her non-dominant right hand she can occasionally use hand controls and reach overhead but can frequently handle, finger, and feel. She can occasionally climb ramps and stairs but can never climb ladders or scaffolds. She can frequently balance, stoop, crouch, and kneel, but only occasionally crawl. Claimant should never be exposed to unprotected heights, dangerous machinery, dangerous tools, hazardous processes, or operate commercial motor vehicles. She should never be exposed to concentrated dust, fumes, gases, or other pulmonary irritants. Claimant could only remember short, simple instructions and could only engage in simple, routine, and repetitive tasks. She would be limited to making simple, work-related decisions. She would be able to accept constructive, non-confrontational criticism, work in small group settings, and accept changes in the workplace if such changes were introduced gradually and infrequently. She would be unable to perform assembly line work with production rate pace, but would be able to perform goal-oriented work. She

would be off task five percent of an eight-hour workday, in non-consecutive minutes.

(Doc. 6-3, pp. 28-29).

Based on this RFC, the ALJ concluded that Ms. Cobb is not able to perform her past relevant work as a medical laboratory technician. (Doc. 6-3, p. 29). Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Ms. Cobb can perform, including telephone quote clerk, surveillance system monitor, and inspector. (Doc. 6-3, p.30). Accordingly, the ALJ determined that Ms. Cobb has not been under a disability within the meaning of the Social Security Act. (Doc. 6-3, p. 30).

## IV.   ANALYSIS

Ms. Cobb argues that she is entitled to relief from the ALJ's decision because the ALJ failed to properly evaluate her subjective complaints of pain. (Doc. 10, p. 4). "To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Commissioner of Social Sec.*, 600 Fed. Appx. 650, 656 (11th Cir. 2015) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)). A claimant's testimony coupled with evidence that

meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

If an ALJ discredits a claimant's subjective testimony, then the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029 at *9. In this case, the ALJ failed to account for significant record evidence when applying the pain standard.

Ms. Cobb argues that she suffers from a combination of multiple severe impairments. (Doc. 10, p. 5). During her administrative hearing, Ms. Cobb testified that she has difficulty standing, walking, and lifting. (Doc. 6-3, pp. 62-64). Ms. Cobb also testified she cannot sit for prolonged periods of time because of pain in her lower back. (Doc. 6-3, pp. 61-62).[3] According to Ms. Cobb, because of her fatigue, she cannot stand for more than ten to fifteen minutes without feeling as if she is going to "pass out." (Doc. 6-3, p. 62). She testified that her doctors attribute this fatigue to her anemia, but she cannot take iron supplements because the supplements would negatively affect her hepatitis C virus. (Doc. 6-3, pp. 62-63). Ms. Cobb explained that because of her fatigue, she must always have another person with her in case she faints or falls down. (Doc. 6-3,

---

[3] During the hearing, the ALJ noted that there was nothing in the record indicating that Ms. Cobb has issues with lower back pain. Ms. Cobb acknowledged this fact, saying she had never been to the doctor for it. (Doc. 6-3, pp. 61-62).

p. 53).  Ms. Cobb testified that although she previously was very active, she now can only

"walk a block, or so," and she uses a walker on days she feels especially weak.  (Doc. 6-3, pp. 57, 63).

As for lifting, Ms. Cobb testified that she can lift up to a gallon of milk with her left hand, but due to nerve damage, she does not use her right arm "for much anything" and "can't even hold on to a cup" with this arm.   (Doc 6-3, pp. 63-64).  She testified, "I could pick up large objects . . . just by feeling a lot of pressure.  But if it's something small . . . it's hard for me to pick it up."  (Doc. 6-3, p. 61).

Ms. Cobb testified that due to celiac disease, she spends a couple days per month in bed "in so much pain."  (Doc. 6-3, p. 71).  Additionally, Ms. Cobb explained that she regularly feels nauseous after eating and is often without an appetite.  (Doc. 6-3, p. 43).  Because of this, Ms. Cobb asserts that she has lost one hundred pounds in less than a year. (Doc. 6-3, pp. 42-43).  Ms. Cobb also testified that her restless leg syndrome keeps her up "for hours" at night because of leg spasms.  (Doc. 6-3, p. 72).

Because of her mental and emotional disorders (major depressive disorder, anxiety disorder, and borderline personality disorder), Ms. Cobb testified that she feels depressed every day.  For ten to fifteen days per month, she is severely depressed to the degree that she has difficulty "interacting with others," and is "hysterical . . . a couple days a month." (Doc. 6-3, pp. 72-73).  She stated that panic prevents her from driving and has affected her ability to maintain employment as a cashier.  (Doc. 6-3, pp. 44, 47).  Ms. Cobb added that nerve damage impaired her concentration and memory.  (Doc. 6-3, pp. 65-66).  She testified that she "can't sit through a whole movie" and often has to ask people to repeat

themselves in conversations because her "mind will wander." (Doc. 6-3, p. 65). Additionally, Ms. Cobb stated she has to make notes or set alarms on her phone to remember things. (Doc. 6-3, p. 65). Regarding her decision-making ability, Ms. Cobb testified, "I have trouble making up my mind about what want to do . . . . I've got to where people kind of make up my mind for me." (Doc. 6-3, p. 66). Describing the effect of her medications on her depression and nerve pain, Ms. Cobb stated "I feel a difference if I don't take them, but . . . I'm still depressed . . . [and] I still have nerve pain." (Doc. 6-3, p. 57).

Ms. Cobb described her hobbies as watching television, taking naps, visiting with her boyfriend, and walking around her yard for exercise. (Doc. 6-3, pp. 69-70). Ms. Cobb explained that she can do some light cleaning, but even simple tasks like doing laundry trigger her anxiety. (Doc. 6-3, p. 68). She testified that she helps her family care for their dog, but she cannot lift the dog. (Doc. 6-3, pp. 70-71). She stated she rarely goes out to eat or to see a movie, and she goes to the store "once or twice a month." (Doc. 6-3, p. 69).

The ALJ determined that Ms. Cobb's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Doc. 6-3, p. 26). The ALJ found that Ms. Cobb's subjective pain testimony was only partially consistent the objective medical evidence, Ms. Cobb's conservative treatment

history, her daily activities, and her demeanor during the administrative hearing. (Doc. 6-3, p. 24). The Court examines each category of evidence in turn.

<u>**OBJECTIVE MEDICAL EVIDENCE**</u>

An ALJ may consider objective medical evidence when evaluating a claimant's subjective pain testimony. 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). In this case, the ALJ stated that Ms. Cobb's objective medical history revealed "multiple physical health problems," many of which stemmed from an overdose of Verapamil in 2013. (Doc. 6-3, p. 24).

The ALJ found that the objective medical evidence contradicts Ms. Cobb's testimony about her limited ability to stand and walk. The ALJ noted that although Ms. Cobb's neurologist, Dr. David O'Neal, described her gait as slow and mildly unsteady, the consultative examiner, Dr. Celtin Robertson, found that Ms. Cobb's gait was normal. (Doc. 6-3, p. 24). Dr. Robertson's examination notes state that Ms. Cobb "had no limitation her abilities to walk, lift, or perform fine and gross manipulative activities." (Doc. 6-3, p. 26; *see* Doc. 6-11, pp. 37-41). The ALJ focused his analysis on Dr. Robertson's opinions, finding that "though a later examination indicated slightly more significant findings, such as a slow gait with 'mild' unsteadiness, recent findings are consistent with Dr. Robertson's assessment." (Doc. 6-3, pp. 26-27). The record demonstrates that there was not just one later exam but three later examinations that contradicted Dr. Robertson's assessment. (Doc. 6-12, pp. 59-63).

Ms. Cobb's one-time consultative examination with Dr. Robertson occurred June 24, 2014. (Doc. 6-11, pp. 37-41). In his post-examination report, Dr. Robertson described Ms. Cobb's speech and gait as normal. (Doc. 6-11, pp. 37, 39). He recorded her reflexes as 2+ in both her lower and upper extremities and indicated that she appeared to have no significant skin lesions. (Doc. 6-11, p. 40). However, when Ms. Cobb went to see her treating neurologist, Dr. O'Neal, approximately one year later in May 2015, he described Ms. Cobb's gait as "slow with some unsteadiness." (Doc. 6-12, p. 63). Ms. Cobb had two more appointments with Dr. O'Neal, in June and August of 2015, during which Dr. O'Neal again recorded her gait as slow and mildly unsteady. (Doc. 6-12, pp. 59-60). During these appointments, Dr. O'Neal also reported that Ms. Cobb exhibited mild dysarthria and a slow speech pattern. (Doc. 6-12, pp. 59-60, 63). Dr. O'Neal's findings as to Ms. Cobb's reflexes also contradicted Dr. Robertson's, with Dr. O'Neal recording Ms. Cobb's reflexes as "3+ on the right, 2+ on the left." (Doc. 6-12, pp. 59-60, 63). Moreover, medical evidence of multiple treatment records for skin lesions Ms. Cobb suffered both before and after her consultative examination are at odds with Dr. Robertson's finding of no significant skin lesions. (Doc. 6-11, p. 5; Doc. 6-12, pp. 44, 53, 63, 68).

With respect to Ms. Cobb's testimony describing the effects of her restless leg syndrome, the ALJ referred to treatment notes indicating that her symptoms had improved after her dosage of Neurontin was adjusted. (Doc. 6-3, pp. 24-25; Doc. 6-12, p. 60). The ALJ also noted that recent physical examinations produced "unremarkable findings." (Doc. 6-3, p. 25). In treatment notes from June 2015, Dr. O'Neal did state that

"[r]estless leg syndrome symptoms have essentially resolved with the increase of Neurontin," (Doc. 6-12, p. 60), but two months later, Dr. O'Neal increased Ms. Cobb's dosage of Neurontin again, stating then that Neurontin only "helps with some of the restless leg syndrome symptoms." (Doc. 6-12, p. 59).

Regarding Ms. Cobb's testimony as to her mental health issues, the ALJ acknowledged that the "objective medical record demonstrated that she suffers from multiple mental impairments." (Doc. 6-3, p. 25). The ALJ discounted the severity of those impairments based on the opinion of consultative psychologist William B. Beidleman. The ALJ explained that Dr. Biedleman:

> described the claimant as grossly alert and oriented by person, time, place, and circumstance. Her concentration, attention, and memory were within normal limits. In addition, she had a relatively good general fund of knowledge. Finally, her thought process and content were negative for overt hallucinations, delusions, perceptual disturbance, or gross cognitive confusion.

(Doc. 6-3, p. 25). The ALJ stated that notes from Ms. Cobb's most recent examination with her psychiatrist, Dr. Narithookil Xavier, indicated normal results in areas of "thought process and content, perceptions, memory, judgment, and insight." (Doc. 6-3, p. 25). Furthermore, the ALJ noted that, although Ms. Cobb suffers from anxiety and depression, she still exhibited "goal-directed thinking and intact cognition," and she denied feeling suicidal or violent towards others. (Doc. 6-3, p. 25).

The ALJ gave Dr. Beidleman's opinions substantial weight, finding that Dr. Beidleman's conclusions were "consistent with the medical evidence of the record." (Doc. 6-3, p. 27). That is not so. In June of 2014, Ms. Cobb saw Dr. Beidleman for a

comprehensive mental evaluation. (Doc. 6-11, pp. 33-36). In his report, Dr. Beidleman stated Ms. Cobb's concentration, attention, and memory were within normal limits. (Doc. 6-11, p. 34). In treatment notes from June 26, 2015, Dr. Walker, Ms. Cobb's primary care physician, stated that Ms. Cobb "has a hard time focusing. Just zones out. Then, can't remember anything." (Doc. 6-12, p. 68). The Commissioner argues that there is no mental assessment to support Dr. Walker's conclusion and that Dr. Walker merely recited Ms. Cobb's subjective complaints. The record demonstrates that Dr. Walker tied Ms. Cobb's memory loss to one of her physical impairments. He stated: "Renal failure. That is a continued issue playing into her memory loss." (Doc. 6-12, p. 68).

The record demonstrates that the ALJ did not consider all of Ms. Cobb's medical records. (Doc. 10, p. 7). An "ALJ cannot pick and choose among doctor's records to support his own conclusion." *Chambers v. Astrue*, 671 F.Supp.2d 1253, 1258 (N.D. Ala. 2009); s*ee also Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990) (quoting *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) ("In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision."); *Pritchett v. Barnhart*, 288 F.Supp.2d 1224, 1241 (N.D. Ala. 2003) ("the reasons articulated for rejecting the plaintiff's allegations about symptoms . . . are not in fact supported by substantial evidence. This becomes even more apparent when evidence not discussed by the ALJ in his decision is considered."). Viewing the evidence as a whole, this Court finds that the

ALJ failed to account for evidence of multiple medical conditions that could reasonably be expected to produce the symptoms Ms. Cobb describes.

### CONSERVATIVE TREATMENT

With respect to Ms. Cobb's treatment history, the ALJ found, "[t]he use of only conservative treatment in recent years suggests that the claimant's impairments are managed with medication." (Doc. 6-3, p. 26). In classifying Ms. Cobb's treatment as conservative, the ALJ failed to consider the longitudinal history of Ms. Cobb's medical treatment records. *See* SSR 16-3P, 2016 WL 1119029 at *8 ("Persistent attempts to obtain relief of symptoms . . . may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent."). In this case, Ms. Cobb's mother told Dr. Biedleman that Ms. Cobb first was medicated for depression while she (Ms. Cobb) was in eighth grade. (Doc. 6-11, p. 34). Medical records indicate that Ms. Cobb has a "history of suicide attempts" and that she has been admitted to both Brookwood's and UAB's psychiatric hospitals. (*See e.g.*, Doc. 6-8, pp. 2-3; Doc. 6-9, pp. 13, 17). The ALJ was incorrect to suggest that this treatment was conservative in nature. *Grier v. Colvin*, 117 F. Supp. 3d 1335, 1351 (N.D. Ala. 2015) (stating ALJ was incorrect to classify claimant's medical treatment record as "conservative and effective" because claimant had "continually sought medical treatment" for her symptoms); *Carr v. McMahon*, 481 F. Supp. 2d 1227, 1231-32 (N.D. Ala. 2007) (stating the fact that the claimant's doctor regularly prescribed a powerful pain killer for claimant's pain shows a "longitudinal history of complaints and attempts at relief.").

The ALJ also noted that Ms. Cobb's recent treatment history contained no surgeries, injections, or emergency room visits. (Doc. 6-3, p. 26). The absence of treatment may support a finding that a claimant's pain is not as significant as the claimant indicates, but poverty may excuse a claimant's failure to seek treatment. *Crow v. Colvin*, 36 F. Supp. 3d 1255, 1263 (N.D. Ala. 2014). In this case, Ms. Cobb testified that she no longer attends physical therapy because her "parents don't want to pay for it anymore." (Doc. 6-3, p. 56). Additionally, Dr. Walker's treatment notes from April 2015 state: "My desire is she could get hepatitis C cure, but [it] is too expensive. Her insurance won't cover it at this point." (Doc. 6-12, p. 69). These statements suggest that Ms. Cobb was unable to pursue certain treatments because of her financial situation.

## DAILY ACTIVITIES AND DEMEANOR

In assessing Ms. Cobb's subjective pain testimony, the ALJ evaluated not only Ms. Cobb's medical records but also her daily activities and her demeanor at the administrative hearing. (Doc. 6-3, pp. 25-26). These are proper subjects for consideration. *See* 20 C.F.R. § 404.1529(c)(3) (listing "daily activities" as a relevant factor to consider in evaluating a claimant's subjective pain testimony); *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987) ("The ALJ is not prohibited 'from considering the claimant's appearance and demeanor during the hearing.'") (quoting *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985)).

In this case, the ALJ found Ms. Cobb's daily activities were "not limited to the extent expected, given the complaints of disabling symptoms and limitations." (Doc. 6-3, p. 25). The ALJ reasoned that Ms. Cobb was able to perform some household chores, go

14

on car rides with her friends or mother, maintain focus long enough to watch television or read, walk daily through her yard or inside her house, and help care for the family pet. (Doc. 6-3, pp. 25-26).

When examining daily activities, an ALJ must consider the record as a whole. *See Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (finding that substantial evidence did not support the Appeals Council's finding that the claimant's "daily activities and her ability to care for her personal needs have not been significantly affected" because the Appeals Council "ignored other evidence that her daily activities have been significant affected"). The Eleventh Circuit has recognized that "participation in everyday activities of short duration" will not preclude a claimant from proving disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Instead, "[i]t is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform chores or drive short distances." *Early v. Astrue*, 481 F. Supp. 2d 1233, 1239 (N.D. Ala. 2007).

Here, Ms. Cobb's limited participation in daily activities does not preclude a finding of disability. The record demonstrates that there are many days that Ms. Cobb's physical and mental impairments restrict her from engaging in the daily activities the ALJ cited. Ms. Cobb suffers from persistent depressive disorder. She testified that for 10 to 15 days per month, she feels severely depressed. (Doc. 6-3, p. 69). Additionally, Ms. Cobb testified that due to Celiac disease, she spends a couple of days per month in bed. (Doc. 6-3, p. 70). Ms. Cobb does dishes on days when she feels well, but "that's not much." (Doc. 6-3, p. 67). The impairments that restrict Ms. Cobb's daily activities also would restrict her ability to work.

As for Ms. Cobb's appearance, the ALJ noted that he observed no problems with Ms. Cobb's gait. She appeared to have no difficulty sitting or rising from her chair, and she did not appear to be in "acute distress." (Doc. 6-3, p. 26). Although an ALJ may consider a claimant's appearance and demeanor during an administrative hearing, demeanor cannot serve as the exclusive basis for denying disability. *Long v. Shalala*, 902 F. Supp. 1544, 1547 (M.D. Fla. 1995). In this case, even if the ALJ's conclusions as to Ms. Cobb's appearance and demeanor are accurate, those conclusions, on their own, cannot support the ALJ's finding that Ms. Cobb has not been under a disability because substantial evidence does not support the balance of the ALJ's analysis of Ms. Cobb's subjective pain testimony.

## V.     CONCLUSION

For the reasons stated above, the Court remands the decision of the Commissioner for further consideration in light of the complete administrative record.

**DONE** and **ORDERED** this May 29, 2018.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE